IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

| | | |
|---|---|---|
| JOSEPH KIEHLMEIER-STRATTON, | ) | |
| | ) | |
| Plaintiff | ) | 1:22-CV-00169-RAL |
| | ) | |
| vs. | ) | RICHARD A. LANZILLO |
| | ) | CHIEF UNITED STATES |
| WEXFORD HEALTH SOURCES, INC., | ) | MAGISTRATE JUDGE |
| HEIDI KARASH, JOSEPH KOHLER, | ) | |
| | ) | |
| Defendants | ) | MEMORANDUM OPINION ON MOTION |
| | ) | TO DISMISS |
| | ) | IN RE: ECF NO. 15 |
| | ) | |

I.      Introduction

Plaintiff, Joseph Kiehlmeier-Stratton, a former pretrial detainee at the Erie County Prison

("ECP"), commenced this action against Wexford Health Sources Inc. ("Wexford"), Joseph

Kohler, D.D.S. ("Kohler") and Heidi Karash ("Karash") (collectively, "Defendants") based on

allegations that each had a role in denying him appropriate and necessary dental care during his

detention at ECP. *See* ECF No. 1.  He asserts that Defendants acted with deliberate indifference

to his serious dental needs in violation of his rights under the Fourteenth Amendment and seeks

redress of this violation under 42 U.S.C. § 1983.  Defendants have moved to dismiss Plaintiff's

Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  *See* ECF No. 15.  Plaintiff has filed a response

in opposition to the motion (ECF No. 19), and the matter is now ripe for disposition.  For the

reasons discussed below, the motion will be granted in part and denied in part.[1]

II.      Standard of Decision

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal

sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  The Court

accepts as true all well-pleaded facts in the complaint.  *See Fowler v. UPMC Shadyside*, 578

F.3d 203, 210 (3d Cir. 2009).  In deciding a motion to dismiss, the court is not opining on

whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present

factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice

and Procedure § 1216, pp. 235-36 (3d ed. 2004).  *See also Ashcroft v. Iqbal*, 556 U.S. 662

(2009).  A complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege

"enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570

(rejecting the traditional Rule 12 (b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41

(1957)).  In making this determination, the court must view the well-pleaded factual allegations

in the complaint in a light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281

F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to

dismiss, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555.

A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v.*

*Allain*, 478 U.S. 265, 286 (1986)).  Moreover, a court need not accept inferences drawn by a

---

[1] Pursuant to 28 U.S.C. 636(c)(1), the Parties have consented to have a United States Magistrate Judge conduct all proceedings in this case through entry of a final judgment. *See* ECF No. 20; ECF No. 21.

plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *Twombly*, 550 U.S. at 555. *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Court of Appeals for the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. With these standards as guidance, the Court now turns to the factual allegations of Plaintiff's Complaint, which the Court accepts as true for purposes of the pending motion. *See Pittsburgh Logistics Sys. Inc. v. Frantzen,* 2023 WL 203163, at *2 (W.D. Pa. Jan. 17, 2023) (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d. Cir. 2008)).

III.    Factual Allegations of the Complaint

On or about February 25, 2021, Plaintiff was transported to the Erie County Prison ("ECP") following his arrest on charges of simple assault and possession of a firearm without a

3

permit. *See* ECF No. 1, ¶ 10.  During intake, medical staff noted Plaintiff's missing or broken teeth.[2]  Defendant Kohler is a dentist who provides dental services at the ECP; Defendant Karash serves as ECP's Health Service Administrator; and Defendant Wexford Health is Kohler's employer. *Id.*, ¶¶ 2-4.  Each is alleged to be a "state actor," and the Defendants do not contest this status for purposes of their pending motion. *Id.*, ¶¶ 3-5.

In May of 2021, Plaintiff began to make requests to prison officials concerning his dental needs related to his broken teeth. *Id.*, ¶ 12.  On September 19, 2021, medical personnel noted that Plaintiff was seen for a dental screening and stated he was experiencing pain "in the L/R and U/L areas." *Id.*, ¶ 13.  Plaintiff asked that his teeth be filled. *Id.*  Medical personnel explained that "we do not do fillings here at the Erie County Prison and told him we treat emergency pain with extractions." *Id.*  Plaintiff was then seen by Kohler on October 6, 2021. *Id.*, at ¶ 14.  Kohler noted Plaintiff's report of pain, extracted Plaintiff's tooth number 30, and prescribed antibiotics. *Id.*  Plaintiff told Kohler that he wanted his tooth repaired instead of extracted, but Kohler informed him that restorative dentistry[3] was not an option at ECP and that "policy" would only allow Kohler to either pull the tooth or leave it untreated. *Id.*  Because he was in a great deal of pain, the Plaintiff consented to the extraction. *Id.*  Medical notes entered by ECP staff confirmed that Plaintiff requested fillings but Kohler explained that ECP only provides emergency extractions. *Id.*, ¶ 18.

---

[2] Although not specifically alleged, the Court infers from Plaintiff's references to his "arrest on charges" and to the "intake" procedure at ECP that he was a pretrial detainee, rather than an inmate serving a post-conviction sentence and that Plaintiff remained a pretrial detainee throughout his detention at the ECP. *See* ECF No. 1, ¶¶ 10, 11. *See, e.g., Quiero v. Muniz*, 2015 WL 13738994, at *3, n.6 (M.D. Pa. Aug. 3, 2015) (holding that court could infer plaintiff's status as a pretrial detainee based on allegations of his complaint referring to his participation in pretrial proceedings during his detention).

[3] The Court uses the term "restorative dentistry" or "restorative dental treatment" interchangeably to include such treatment and procedures such as fillings, crowns, and root canals. *See, e.g., Baughman v. Garcia*, 254 F.Supp.3d 848 (S.D. Tex. 2017).

4

As of October 16, 2021, the Plaintiff was still experiencing tooth pain and gum problems. *Id.*, ¶ 19. He was prescribed another antibiotic as well as Tylenol. *Id.* Plaintiff again reported continuous tooth pain and headaches on October 29, 2021. *Id.*, ¶ 21. On November 2, 2021, he was seen by a nurse who noted Plaintiff's swollen gums but recorded that Plaintiff did not want to be seen by the prison dentist because he "won't fill [Plaintiff's] cavity, only pull it." *Id.*, ¶¶ 22-23. Plaintiff filed grievances concerning his dental care, which were rejected. On November 17, 2021, the ECP warden specifically notified Plaintiff that "we provide dental exams and emergency treatment in the form of extractions, when they are necessary. If oral surgery is necessary, it is referred by the dentist. Fillings are not a service we provide." *Id.*, ¶ 28. Plaintiff received no treatment for teeth numbers 5, 12, and 28.

By May 28, 2022, one of Plaintiff's damaged teeth broke off, leaving him in pain. *Id.*, ¶ 30. Kohler told him that he needed to have these teeth treated or they would be beyond repair. *Id.*, ¶ 31. The Plaintiff again asked for restorative treatment but Kohler again stated that the only treatment he could provide was extraction. *Id.*, ¶ 32. Plaintiff was again placed on an antibiotic but no other treatment was offered for his damaged teeth. *Id.,* ¶ 33. The ECP put the Plaintiff on a "dental soft diet" and he was not able to eat any hard foods for nine months. *Id.*, ¶ 35.

Based on the foregoing facts, Plaintiff asserts two claims. At Count I, Plaintiff presents a claim against Wexford based on its policy/custom of denying restorative dental care, save for examination and extractions. *See id.* ¶¶ 45-53. At Count II, the Plaintiff claims Karash and Kohler acted with deliberate indifference to his serious dental needs in violation of the Fourteenth Amendment. *Id.*, ¶¶ 54-63. Defendants challenge the legal sufficiency of both claims. Because the claim against Wexford depends, as a threshold matter, upon Plaintiff

demonstrating a violation of his constitutional rights by one or more of the individual defendants, the Court will begin its analysis with Count II.

IV.    Discussion and Analysis

  A.    Plaintiff's Complaint states a Fourteenth Amendment deliberate indifference claim against Kohler.

Plaintiff alleges that by denying him any treatment option for his tooth decay other than extraction, Kohler acted with deliberate indifference to his serious dental needs in violation of his rights under the Fourteenth Amendment. *See id.*, at ¶¶ 54-63. Defendants contend this claim should be dismissed because it raises nothing more than a disagreement over the type of treatment provided. *See* ECF No. 16, pp. 11-12.

As a pretrial detainee, Plaintiff's right to adequate dental care arises under the Due Process Clause of the Fourteenth Amendment. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). "The Fourteenth Amendment affords pretrial detainees protections at least as great as the Eighth Amendment protections available to a convicted prisoner." *Id.* Accordingly, if Plaintiff's allegations state a § 1983 claim under the Eighth Amendment, they necessarily support a claim under the Fourteenth Amendment.[4] *See Moore v. Luffey*, 767 Fed. Appx. 335, 340 (3d Cir. Apr. 19, 2019). To state a claim for relief under the Eighth Amendment,

---

[4] Although the Supreme Court has applied an "objectively reasonable" standard to analyze an excessive force claim under the Fourteenth Amendment, *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015), the Court of Appeals for the Third Circuit has declined to address whether the "objectively reasonable" standard applies to deliberate indifference to medical or dental claims. *Moore*, 767 Fed. Appx. at 340 n.2.

Plaintiff must allege facts to show a "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Id.* at 582 (citation omitted).[5]

A serious medical need is "one that has been diagnosed as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Walker v. Brooks*, 2009 WL 3183051 (W.D. Pa. Sept. 30, 2009) (citing *Monmouth County Correction Institute Inmates v. Lanzaro*, 834 F. 2d 326,347 (3d Cir. 1987)). Plaintiff alleges that he suffered prolonged tooth pain, infection, swelling, bone pain, debilitating headaches, and tooth loss. *See* ECF No. 1, *generally*. These allegations satisfy the standard for a serious medical need. *See e.g., Robison v. Sutter*, 2021 WL 6054944, at *7 (W.D. Pa. Nov. 22, 2021) (plaintiff's dental pain, tooth breakage, infection, swelling, neck pain, and the loss of a tooth surface supported existence of serious medical need), *report and recommendation adopted*, 2021 WL 6052112 (W.D. Pa. Dec. 21, 2021) (citations omitted).

The second element of the claim requires a showing that Kohler acted with deliberate indifference to Plaintiff's serious dental need. "Deliberate indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, or persistent conduct in the face of resultant pain and risk of permanent injury." *Scutella v. Erie Cnty. Prison*, 2020 WL 571065, at *4–5 (W.D. Pa. Feb. 5, 2020) (internal citations omitted). However, "an inmate's dissatisfaction with a course of medical treatment, standing alone, does not support a viable Eighth Amendment claim." *Tillery*

---

[5] Plaintiff has alleged facts sufficient to support Kohler's personal involvement in the denial of certain treatment for his dental needs. Plaintiff alleges that Kohler offered extraction as Plaintiff's only treatment option for his tooth decay and categorically declined to consider any form of restorative treatment. While it also appears that Kohler did so pursuant to ECP policy, the facts alleged clearly support his active role in the alleged violation of Plaintiff's rights.

*v. Noel*, 2018 WL 3521212, at *5 (M.D. Pa. June 28, 2018) (collecting cases).  Such complaints

fail as constitutional claims because "prison authorities are accorded considerable latitude in the

diagnosis and treatment of prisoners, and the exercise by a doctor of his professional judgment is

never deliberate indifference." *Scuttella*, 2020 WL 571065, at *4-5 (internal citations omitted).

"[A]s long as a physician exercises professional judgment his behavior will not violate a

prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d

Cir. 1990).  "Therefore, where a dispute in essence entails nothing more than a disagreement

between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as

a constitutional claim under § 1983." *Tillery*, 2018 WL 3521212, at *5 (citing *Gause v.

Diguglielmo*, 339 Fed. Appx. 132 (3d Cir. 2009) (characterizing a dispute over pain medication

as the type of "disagreement over the exact contours of [plaintiff's] medical treatment" that does

not violate the constitution)).  Based upon these principles, "courts have consistently rejected

Eighth Amendment claims where an inmate has received some level of medical care." *Hensley*

*v. Collins*, 2018 WL 4233021, at *3 (W.D. Pa. Aug. 15, 2018) (quoting *Clark v. Doe*, 2000 WL

1522855, at *2 (E.D. Pa. Oct. 13, 2000)).  *See also Wisniewski v. Frommer*, 751 Fed. Appx. 192,

195-96 (3d Cir. Oct. 3, 2018) (noting that "there is a critical distinction 'between cases where the

complaint alleges a complete denial of medical care and those alleging inadequate medical

treatment.'") (quoting *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017)).

"Nonetheless, there are circumstances in which some care is provided yet it is insufficient

to satisfy constitutional requirements." *Palakovic v. Wetzel*, 854 F.3d 209, 228 (3d Cir. 2017).

These circumstances include where prison officials provide treatment but opt for "an easier and

less efficacious treatment of the inmate's condition." *Id.* (quoting *West v. Keve*, 571 F.2d 158,

162 (3d Cir. 1978)) (internal citation omitted).  Similarly, prison officials may not deny

reasonable requests for medical treatment when such "denial exposes the inmate 'to undue

suffering or the threat of tangible residual injury,'" *id.* (quoting *Monmouth County Corr. Inst.*

*Inmates*, 834 F.2d at 346 (internal citation omitted)), or intentionally refuse to provide care

where the need for such care is acknowledged. *Id.* (citing *Ancata v. Prison Health Servs.*, 769

F.2d 700, 704 (11th Cir. 1985)).

      The Complaint acknowledges that Kohler treated Plaintiff for his tooth decay and related

conditions.  Pursuant to ECP policy, treatment for decay was limited to tooth extraction; filling

of caries or other restorative treatment was not an option.  The Complaint also supports that at

least some of the Plaintiff's tooth decay could have been treated with fillings but, as a matter of

policy, the ECP was not equipped to provide such restorative dental care and would not refer

detainees to outside dentists who were equipped to provide such care.  Whether such a policy

endorses deliberate indifference is a matter of some debate among the federal courts.

      In *Heitman v. Gabriel*, 524 F. Supp. 622, 627 (W.D.Mo.1981), the district court held that

a county jail's policy permitting only extractions for dental problems was constitutionally

deficient.[6]  In *Heitman*, the jail offered tooth extraction as the only treatment option for dental

conditions, even those that could be addressed by routine dental fillings.  *Id.*  ("While it is by no

means unprecedented for an old-fashioned prison regime to offer tooth extraction as the only

dental care, no case has been found where such a limitation has been deemed judicially

tolerable") (quotation and citation omitted).  *See also Stack v. McCotter*, 79 Fed. Appx 383, 390

---

[6] A dispute over the constitutionality of a jail's extraction-only policy was also squarely at issue in *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir.2007). There an inmate asserting a claim of deliberate indifference to his dental care sought to end the Greene County Jail's unwritten extraction-only policy. The Eighth Circuit observed that, prior to filing suit, the inmate had been transferred from the Greene County Jail to another facility where his dental ailments had apparently been treated without complaint.  Given that the inmate did not anticipate ever returning to the Greene County Jail, the court concluded he had not demonstrated a likelihood of future injury and therefore lacked standing to challenge the extraction-only policy.

(10th Cir. Oct. 24, 2003) (holding an "extraction-only" policy may be constitutionally deficient in certain circumstances); *Amaro v. New Mexico Corr. Dep't.*, 2022 WL 796358 (D.N.M. Mar. 16, 2022) (objective element of Eighth Amendment claim was established where "extraction-only" policy prevented dentists from performing necessary and appropriate dental procedure).

In *Chance v. Armstrong*, 143 F.3d 698 (2d Cir.1998), the Court of Appeals for the Second Circuit found that an inmate stated a viable Eighth Amendment claims against prison dentists who offered him only the option of extraction of teeth that could be saved with fillings or other less invasive procedures. *Id.* at 700-01 (inmate "asserted that less invasive procedures, such as filling his teeth instead of extracting them, would have remedied his dental problems"). The inmate further alleged that the extraction-only option offered to him was motivated by issues of cost and financial incentives to the dentists rather than their dental judgment. *Id.* at 704. The Court reasoned that "[t]his allegation of ulterior motives, if proven true, would show that the defendants had a culpable state of mind and that their choice of treatment was intentionally wrong and did not derive from sound medical judgment." *Id.* Unlike the self-serving motives allegedly underlying the prison dentists' treatment decisions in *Chance*, Plaintiff's Complaint in this case alleges that Kohler's judgment and discretion were constrained by an ECP policy that allowed only extraction of decayed teeth, even those that could be save by a filling. Still, the facts alleged support an inference that Kohler's treatment decision was motivated by factors other than his dental judgment. While the constraints placed on him may be relevant to other issues, such as potential qualified immunity, these issues are not presently before the Court. Thus, the analysis and holding adopted in *Chance* favors the viability of Plaintiff's claim.

In contrast, several courts have held that prison policies that offer extraction in lieu of restorative treatments such as crowns, implants, and root canals do not in certain situations

10

violate the Eighth Amendment. *See e.g.*, *Baughman v. Garcia*, 254 F. Supp. 3d 848, 877–78

(S.D. Tex. 2017), *aff'd sub nom. Baughman v. Seale*, 761 Fed. Appx. 371 (5th Cir. 2019)

("offering extraction in lieu of a root canal or other more expensive treatment for tooth decay

does not violate the Eighth Amendment if extraction is medically appropriate and will resolve

the issue); *Koon v. Udah*, 2008 WL 724041, at *7 (D.S.C. Mar. 17, 2008) (no Eighth

Amendment violation where prison offered extraction only and not a root canal and crown at

state expense based on prison policy); *Wilkens v. Ward*, 2007 WL 2407082, at *6–7 (W.D. Okla.

Aug. 22, 2007) (no Eighth Amendment violation where prisoner was refused a root canal and

offered extraction only pursuant to prison policy); *Del Muro v. Federal Bureau of Prisons*, 2004

WL 1542216, at * 3–4 (N.D. Tex. July 8, 2004) (no Eighth Amendment violation where the

prisoner was offered extraction only pursuant to prison policy and not the crowns or a bridge that

he alleged to be more appropriate treatment); *Kopera v. Cook County Bd. of Com'rs*, 1994 WL

577238, at *5 (N.D. Ill. Oct. 18, 1994) (rejecting an inmate's constitutional challenge to a prison

policy whereby only extraction services are provided); *see also Brathwaite v. Corr. Med. Servs.*,

630 F.Supp.2d 413 (D. Del. 2009).  Other courts have held that extraction in lieu of restorative

treatments did not violate the Eighth Amendment, but it is not clear from the facts of those cases

whether the offer of extraction was based upon a determination that it was an appropriate

treatment under the prisoner's particular circumstances or a blanket prison policy. *See e.g.,*

*McQueen v. Karr*, 54 Fed. Appx. 406 (table), 2002 WL 31688891, at *1 (5th Cir.2002)

(unpublished per curiam) (rejecting an Eighth Amendment challenge by an inmate who declined

extraction because he wanted "more expensive restorative treatment"); *Campbell v. St. Clair*

*County Jail*, 2008 WL 186376, at *2 (E.D.Mich.Jan.22, 2008).

In *James v. Penn. Dep't of Corr.*, 230 Fed. Appx. 195, 196 (3d Cir. 2007) (per curiam),
the Court of Appeals for the Third Circuit noted, but did not squarely address, a Pennsylvania
Department of Corrections' policy that categorically prohibited root canal procedures. The
plaintiff in that case was an inmate who suffered from a tooth abscess. He alleged that the prison
dentist's decision to extract his tooth rather than employ "an alternative method to sooth his
painful condition" violated his Eighth Amendment rights. The Court of Appeals affirmed the
district court's dismissal of the inmate's complaint, holding that the inmate's "allegations merely
amounted to a disagreement over the proper course of his treatment and thus failed to allege a
reckless disregard with respect to his dental care." *Id.* at 197 (citing *Farmer v. Brennan*, 511
U.S. 825, 836 (1994)). Although a response to the inmate's grievance concerning his dental care
referred to a DOC policy precluding root canal treatment, *see id.* at 196-97 ("The only possible
procedure to save [the inmate's] tooth would have been a root canal [] [and] … D.O.C. policy
does not permit these particular type of root canals."), the dentist's decision to extract the tooth
appeared to have been based on his professional judgment that extraction was the appropriate
treatment for the abscessed tooth. Because the dentist's decision to extract the tooth was based
on the exercise of his professional judgment rather than any non-medical consideration, he could
not be found to have acted with deliberate indifference.[7] *Id.* at 197-98. In contrast to the facts at
issue in *James*, Plaintiff alleges that Kohler's decision to extract his decaying teeth was not based
on the exercise of his professional judgment. Indeed, Plaintiff alleges that Kohler acknowledged

---

[7] Some courts have cited *James* as holding that a prison policy foreclosing root canal procedures in favor of extraction of teeth comports with the Eighth Amendment. *See, e.g., Baughman*, 254 F. Supp. 3d at 878; *Greywind v. Podrebarac*, 2011 WL 4750962, at *7 (D.N.D. Sept. 12, 2011), *report and recommendation adopted*, 2011 WL 4743751 (D.N.D. Oct. 5, 2011), *aff'd*, 471 Fed. Appx. 544 (8th Cir. 2012). The validity of the DOC policy, however, was not at issue in *James*.

that the filling of his caries was an appropriate treatment option and would have saved at least some of the affected teeth.

While it is difficult to fully reconcile the various cases relating to the constitutionality of a dentist's refusal to provide restorative dental care such as fillings based on an extraction-only policy, it appears that most turn on whether the dentist based the inmate's treatment, at least in part, upon his professional judgment. A viable claim is stated where the facts alleged support an inference that the dentist exercised no such judgment but simply opted for "an easier and less efficacious treatment of the inmate's condition" than what was medically appropriate. *See Palakovic*, 854 F.3d at 228. Plaintiff's allegations support such a claim. Plaintiff alleges that while Kohler acknowledged that he had an immediate need for dental fillings to address his decayed or broken teeth and that such restorative care was medically appropriate, he offered him only extraction of the affected teeth. Extraction of otherwise repairable teeth was allegedly the easier option because it did not require any upgrade to ECP dental facilities or equipment or a referral of Plaintiff to an outside dentist. These allegations support a plausible inference of deliberate indifference to Plaintiff's serious dental needs. Accordingly, Defendants' motion to dismiss Count II of Plaintiff's Complaint against Kohler will be denied.

> B. The Complaint fails to state a claim against Karash.

Plaintiff's Complaint fails to allege facts to support a claim against Karash. The Complaint identifies her as the "Health Services Administrator" at the Erie County Prison and alleges that she was an agent of Wexford. ECF No. 1, ¶ 3, 5. Plaintiff also alleges that she is a "state actor" because her actions were "inextricably intertwined with the actions and purposes of Erie County …." *Id.*, ¶ 5. Beyond those averments, the Complaint alleges no facts to support that Karash was personally involved in any asserted violation of Plaintiff's constitutionally

protected rights. "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Hersh v. McFadden*, 520 F. Supp. 3d 644, 650 (E.D. Pa. 2021) (pretrial detainee failed to assert personal involvement of health services administrator and thus failed to state a claim against her under § 1983) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)); *Barrett v. Marberry*, 402 Fed. Appx. 143, 146 (7th Cir. 2010) (absent evidence that health services administrator was personally involved in inmate's dental treatment, his supervisory or administrative role could not support a deliberate indifference claim). Because Plaintiff does not allege that Karash participated in the conduct that forms the basis for his claim, liability cannot be imposed against her under § 1983.[8] *See, e.g., Walters v. Harry*, 2023 WL 348994, at *5 (M.D. Pa. Jan. 20, 2023). Therefore, the claim against Karash in Count II of the Complaint will be dismissed.

        C.     The Complaint states a *Monell* claim against Wexford.

A private company providing prison health services "cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability." *Natale*, 318 F.3d at 583 (citing *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)). Rather, a governmental employer or private company performing the functions of a governmental entity faces liability for its employee's constitutional violation only where it adopted a relevant policy or custom that resulted in the asserted constitutional violation.[9] *Id.*, at

---

[8] This distinguishes the claim against Karash in *Robison v. Sutter*, where the plaintiff's complaint identified Karash as the "head nurse" at the ECP who examined the Plaintiff's tooth and told him that he "would see the dentist the following week." 2021 WL 6054944, at *4 (W.D. Pa. Nov. 22, 2021). This allegation supported her personal involvement in that case. *Id.*

[9] Alternatively, liability will arise where the plaintiff proves that an entity performing a governmental function failed to train, supervise, or discipline its employees, and that the failure amounted to deliberate indifference to the constitutional rights of those affected and resulted in the plaintiff's constitutional injury. *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). In this context, the provider's "failure to train or supervise must amount to a policy or custom in disregard of an obvious risk that its employees or agents would commit constitutional violations." *Ponzini v. PrimeCare Med., Inc.*, 269 F. Supp. 3d 444, 526 (M.D. Pa. 2017), *aff'd in part, vacated in part on other*

14

583-84 (citing *Bd. of Cnty. Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997)).

Therefore, as a threshold matter, the plaintiff's complaint "must identify a custom or policy, and

specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658

(3d Cir. 2009)); *see also Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) ("a plaintiff

presenting an unconstitutional policy must point to an official proclamation, policy or edict by a

decisionmaker possessing final authority to establish municipal policy on the relevant subject").

*See also Cephas v. George W. Hill Corr. Fac.*, 2010 WL 2854149, at *2 (E.D. Pa. July 20, 2010)

(dismissing prisoner plaintiff's claim against private health company servicing county jail where

facts alleged in the complaint failed to support that an institutional policy or custom caused the

violation of plaintiff's rights). "Once a policy or custom is identified, a plaintiff must also allege

facts stating a plausible connection between the policy and the alleged constitutional harm."

*Scott v. Biricocchi*, 2022 WL 18542328, at *5 (W.D. Pa. Oct. 19, 2022), *report and

recommendation adopted sub nom. Scott v. Biricochi*, 2023 WL 1444741 (W.D. Pa. Feb. 1,

2023) (citing *Palakovic v. Wetzel*, 854 F.3d 209, 232 (3d Cir. 2017) ("To state a claim against a

private corporation providing medical services under contract with a state prison system, a

plaintiff must allege a policy or custom that resulted in the alleged constitutional violations at

issue.")).

As the Court has discussed in detail, *supra*, Plaintiff's Complaint alleges facts sufficient

to state an Eighth Amendment violation claim. The issue now is whether the facts alleged

support a finding that the violation was committed pursuant to a policy or custom of Wexford.

Wexford argues that Plaintiff has "failed to identify an official proclamation, decision or policy

---

grounds sub nom. *Ponzini v. Monroe Cnty.*, 789 Fed. Appx. 313 (3d Cir. 2019). Here, Plaintiff bases his claim
against Wexford solely on the theory that its policy or custom resulted in his constitutional injury rather than upon
any alleged failure to train or supervise.

that delays or denies treatment of dental pain."[10]  ECF No. 16, p. 14.  This argument fails for

multiple reasons.  First, it somewhat misapprehends the nature of the policy or custom to which

Plaintiff objects.  Plaintiff does not argue that Wexford has a policy that forecloses all dental

treatment.  Rather, he argues that Wexford maintains a policy that categorically precludes fillings

for the treatment of dental caries even where they are the most appropriate and least invasive

treatment.  Second, the facts alleged in the Complaint plainly support a policy that prohibited

dentists at the ECP from performing any type of restorative dentistry for tooth decay and instead

constrained them to "extraction-only" treatment.  While it is presently unclear whether this

policy was mandated by the County of Erie, the allegations of the Complaint support that it was

adopted by Wexford as its own policy and practice.  *See* ECF No. 1, ¶ 34 (noting "Wexford

Health's policy of denying any dental services except for 'dental exams' and 'emergency'

extractions").  Further, Plaintiff's allegations support a finding that this policy was the "moving

force" behind his alleged constitutional injury.  *See City of Canton v. Harris*, 489 U.S. 378, 389

(1989).  He alleges that prison personnel told him on September 19, 2021, that "we do not do

fillings here at the [ECP] … and treat emergency pain with extractions."  ECF No. 1, ¶ 13.

Kohler allegedly told Plaintiff that repairing his tooth was "not an option" and "that *policy* would

only allow him to either pull the tooth or leave it."  *Id.*, ¶ 16 (emphasis added).  Other ECP

personnel confirmed this.  In denying Plaintiff's grievance, ECP Warden Kevin Sutter informed

him that "we provide dental exams and emergency treatment in the form of extractions when

they are necessary.  We offer no other services in house … fillings are not a service we provide."

---

[10] A viable *Monell* claim must allege facts to support that an official with policymaking authority adopted or acquiesced to the policy or custom at issue, but the Third Circuit does not require the plaintiff to "specifically identify" the responsible decisionmaker in his complaint.  *See Bielevicz*, 915 F.2d at 850 ("Practices 'so permanent and well settled as to have the force of law [are] ascribable to municipal decisionmakers.'") (quoting *Anela v. City of Wildwood*, 790 F.2d 1063, 1067 (3d Cir. 1986)) (other citation and internal quotation marks omitted)).

*Id.*, ¶ 28.  And in May of 2022, Kohler again informed Plaintiff that he "needed to have his teeth treated immediately or he risked losing them, but that the only treatment he could provide in the Prison" was tooth extraction.  *Id.*, ¶¶ 31-32.  Plaintiff alleges that he suffered swollen gums, headaches, and infections because of this lack of restorative treatment.  *See id.*, at ¶¶ 14, 19, 21, 23, 27, 33.  These allegations sufficiently identify a Wexford policy and its causal relationship to Plaintiff's his constitutional injury.

Moreover, the repeated denial of restorative dental treatment despite Kohler's recommendation that his teeth "be treated immediately or [] risk[] losing them" supports a plausible inference that Wexford had a custom offering only extractions in lieu of more appropriate restorative care.  *See, e.g., Presbury v. Correct Care Solutions, LLC*, 2023 WL 1069882, at *5-6 (E.D. Pa. Jan. 27, 2023).  Plaintiff's Complaint attributes numerous statements to Wexford employees and/or agents in support of this inference.  Louise Morris, for example, told Plaintiff that "we do not do fillings here" and treat emergency pain only "with extractions." ECF No. 1, ¶ 13.  And in May of 2022, Kohler told Plaintiff the only treatment he could provide was "to extract the teeth."  *Id.*, ¶ 32.  These statements and the others previously noted sufficiently support the existence of a Wexford custom of prohibiting its dentists from offering any treatment for tooth decay other than extraction.  Accordingly, Defendants' motion to dismiss the *Monell* claim against Wexford will be denied.

> D.      Plaintiff will be granted leave to amend regarding his claim against
>         Karash.

The Court will dismiss Plaintiff's claim against Karash without prejudice and with leave to amend.  Where dismissal of a civil rights claim is based on the plaintiff's failure to allege sufficient factual detail to support the claim and the plaintiff may potentially cure the deficiency

by alleging additional facts, the court should allow amendment. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Leave to amend is properly denied, however, where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]" *Id.*

In this instance, the Court cannot say that allowing Plaintiff to amend his Complaint to cure the deficiencies of his Section 1983 claim against Karash would be futile or result in any prejudice to Defendants. Therefore, Count II of the Complaint against Karash is dismissed without prejudice and with leave to Plaintiff to file an Amended Complaint.

V.      Conclusion

For the foregoing reasons, the Court will grant Defendants' motion to dismiss as to Count II of the Complaint against Karash and dismiss that claim without prejudice. In all other respects, the Court will deny the motion.

An appropriate Order will follow.

Entered this 6th day of March 2023

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE